STATE v. JIM HICKS, Appellant.—No. 39139.—185 S. W. (2d) 650.

Division Two, February 5, 1945.

Rehearing Denied, March 5, 1945.

*Green & Green* for appellant.

952

*Roy McKittrick,* Attorney General, and *Gaylord Wilkins,* Assistant Attorney General, for respondent.

BOHLING, C.—Jim Hicks appeals from a judgment imposing a sentence of two years' imprisonment for felonious assault. Sec. 4408, R. S. 1939. The information charged Charley Hicks, Walter Hicks, Charley Homan, and defendant with the commission of the offense. Defendant seeks a discharge on the ground the State failed

to give him a speedy trial within the statutory provisions relating thereto and on the ground the State failed to make a submissible case. He also complains of the instructions.

■ Defendant claimed nisi and reasserts here that he was entitled to his discharge under Sec. 4086, R. S. 1939, providing for the discharge of an accused held on bail if he not be brought to trial before the end of the third term of court, unless the delay be occasioned upon his application or by the want of time to try the cause. Consult also Sec. 4087, R. S. 1939. State ex rel. Stevens v. Wurdeman (Banc), 295 Mo. 566, 246 S. W. 189, (overruled in part—see State ex rel. Billings v. Rudolph (Banc), 322 Mo. 1163, 1169, 17 S. W. 2d 932, 933), was an original action in prohibition here on respondent's demurrer to the pleaded facts, and is cited by defendant, we understand, to the proposition that an accused confined in the penitentiary was entitled under the facts to his discharge from a charge pending at the time of his sentence if he were not put upon his trial within the statutory number of terms of court where the continuances were not upon his application, or with his consent, or by reason of want of time to try the cause. The instant review involves additional facts, mentioned infra, not within the scope of and not discussed in State ex rel. v. Wurdeman. Statutory enactments of this nature may be waived by a defendant, being enacted for the benefit of an accused and implementing his constitutional right to a speedy trial. They, as their language indicates and as has been held, are to prevent unreasonable delays in prosecutions, forestalling the protracted imprisonment or harassment of one accused of crime. Their purpose is not to furnish a technical escape from trial and punishment or to forfeit any rights of the public, when the public's representatives are not at fault, to safeguard that law and order necessary for the preservation of society and made effective through the punishment of criminals for their wrongs. ■ Their effect is that an accused "shall not be deprived of speedy trial on account of the laches of the state." State v. Nelson (Mo.), 279 S. W. 401, 403[1]; State v. Huting, 21 Mo. 464, 475; State v. Pierson, 343 Mo. 841, 848[2], 123 S. W. 2d 149, 151[2, 3] (reviewing cases); State v. Woods, 346 Mo. 538, 544[2], 142 S. W. 2d 87, 89[2, 3]; State v. Nolan (Mo.), 171 S. W. 2d 653, 654[2].

The instant information was filed in the September term, 1939, of the court of Douglas county, and the trial occurred at the November term, 1943, of court in Ozark county, the venue having been changed. The State's position is that the continuances involved were by the court of its own motion and, in the circumstances shown of record, defendant waived his rights under the Statute. The continuances occurred by reason of defendant's confinement in the penitentiary on a different charge, he having been discharged therefrom subsequent to the November term, 1942, of the Ozark circuit court. He

never made any effort to get to trial. He never asked for or corresponded with his attorney concerning a trial. The cause was continued to the trial term after his release upon his application. The State was at all times ready to try the cause and so informed defendant's counsel. The prosecuting attorney mentioned defendant's recognizance for appearance in Ozark county to defendant's counsel and did nothing in the matter upon defendant's counsel's assurance it was not necessary. Defendant first filed a plea for discharge on the day of the trial. In these circumstances, under the authorities supra, the State has not been guilty of laches in bringing defendant to trial. His prayer for discharge was properly overruled.

■ Defendant contends the State did not make a submissible case on the ground there was no probative evidence connecting him with the offense. We reach a different conclusion. Defendant presented no witness. The State's evidence stands uncontroverted and to the following effect:

Hobart Barker, an automobile salesman, and Mrs. Merle Douglas were in his automobile in Douglas county, Missouri, on June 23, 1939, when about 7:00 p. m. a tire went "flat." On account of a defective automobile jack Barker was unable to get the wheel off the ground. In 15 to 20 minutes defendant came by in his automobile, going south toward his father's home. Barker attempted to stop him to get a jack, but defendant drove past, stopping 400 to 500 feet away. Barker had turned back to the tire and Mrs. Douglas hallooed to the defendant for an automobile jack. Defendant drove on without answering. About a half hour later defendant again passed Barker's car, going in the opposite direction. This time he had someone with him. Mrs. Douglas again hallooed, intending to ask for an automobile jack. Barker continued intermittent efforts to change the tire, asking other motorists for a jack but he received no help and was unable to fix the tire. About 11:00 p. m. an automobile drove up and stopped 75 or 100 feet in front of the Barker automobile. Thinking help had arrived, Barker started to get out of his car to ask for a jack. Someone from the other car "hollered; turn on your lights." Mrs. Douglas reached over and turned on the lights. Barker continued to get out of the automobile and while he was still in the act of getting out several shots were fired from the other car and 22 No. 2 shot struck Barker. He fell to the ground and started crawling away. The men who did the shooting did not come to the automobile to investigate. Mrs. Douglas finally got out of the car about two hours later. Sometime thereafter she found Barker in the woods. Another shot was fired from the other car. She tried to help Barker. Realizing he was weak, she left him to seek help. She returned with Fred Livingston about 3:30 a. m. Defendant, Charley Hicks, Walter Hicks, and Charley Homan were at the scene, coming out of the woods. There were 5 or 6 empty shells on the ground. Livingston "told them what

they had done and Charley Hicks said, 'I didn't do any of the shooting.' '' Livingston and defendant then went to Barker's car, saw its condition and put a tire on the wheel.

Counsel for defendant made inquiry of the State's witnesses as to whether Barker or Mrs. Douglas had firearms (they had none); whether Barker, when defendant first passed, came out with a gun in his hand and whether they heard ''Constable Charley Hicks'' order them to throw up their hands and inform them they were under arrest when the car drove up and stopped in front of Barker's car. One would infer from this line of questioning that for some undisclosed reason the arrest ▮ of the occupants of the Barker car was contemplated by the others.

There is much more in this record than the presence of defendant at the scene of the crime and cases going off on the mere presence of an accused do not control. No attempt is made by counsel to apply his cited cases, as they must be applied, to the material facts favorable to the State. We have considered the opinions cited. The facts distinguish the cases. Here defendant was seen in his automobile passing the Barker automobile. Soon thereafter he passed driving his car in the opposite direction with someone with him. Then a car came from the last mentioned direction, stopped in front of the Barker car, and the shooting began immediately. Several shots were fired instantaneously. They must have been fired by different persons. Five or six empty shells were on the ground at the scene of the shooting. Defendant, two others by the name of Hicks, and a fourth person were there, coming out of the woods. Defendant was the one who had occasion to know the Barker car had been parked on the highway. Charley Hicks said he did not do any shooting. All this warranted inferences that defendant was one of if not the prime actor in bringing the persons to the scene of the offense. He was directly connected with the transaction and the testimony, if believed, prima facie implicated him in the shooting which occurred immediately upon their arrival. It was not necessary to a conviction that he be one of the ''trigger-men.'' A conspiracy may be established by circumstantial evidence. The contention of no case made falls. State v. Bishop, 317 Mo. 477, 483, 296 S. W. 147, 149[4]; State v. Bresse, 326 Mo. 885, 892(b), 33 S. W. 2d 919, 921[1, 2]; State v. Kolafa, 291 Mo. 340, 347, 236 S. W. 302, 305[2, 3]; State v. Menz, 341 Mo. 74, 91[8], 106 S. W. 2d 440, 448[8-10]. We think very little effort on the part of the State would have produced additional testimony of defendant's connection with the offense and should have been offered at the trial. Public officers should discharge their duties as best they may and endeavor to remove any question of the propriety of their efforts.

▮ Complaint is made that the court refused an instruction to the effect that although the jury believed defendant and others were present and Barker was feloniously shot by the others, still defendant

was to be acquitted unless the State established he had "shot the said Hobart Barker." The information charged defendant and three others with the commission of the offense. The State's theory was that there was a concert of action among those charged. There was evidence defendant acted in concert with others whether or not he did any shooting. The requested instruction did not present a defense to the State's case under any evidence in this record. Its refusal was proper. State v. Gadwood, 342 Mo. 466, 489[V], 116 S. W. 2d 42, 55[15]; State v. Williams (Mo.), 248 S. W. 922(3). Defendant may not complain on the ground it was a converse instruction. It did not present a defense to the case submitted in the State's main instruction. It was not a converse instruction. Had it been a converse instruction and a correct one, it should have been given (State v. Fraley, 342 Mo. 442, 116 S. W. 2d 17, reviewing cases); but defendants are required to tender a correct converse instruction before they can complain of its refusal (State v. Layton, 332 Mo. 216, 225[14], 58 S. W. 2d 454 458[14] (citing cases); State v. Tucker, 333 Mo. 171, 177[5], 62 S. W. 2d 453, 455[5]; State v. Buckner (Mo.), 80 S. W. 2d 167, 169[8, 9]). There was no error connected with the refusal of the instruction.

There was no error in the State's instructions proceeding on the theory defendant and the others involved were acting in concert with each other. State v. Thornton (Mo.), 58 S. W. 2d 314, 317[2, 3]; State v. Menz, supra; State v. Hicks (Mo.), 167 S. W. 2d 69, 73[5].

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.